**REVERSE and RENDER; AFFIRMED and Opinion Filed August 7, 2024**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

_____

## No. 05-23-00560-CV
_____

## BAIN & SCHINDELE TAX CONSULTING, LLC AND SARAH SCHINDELE, Appellants/Cross-Appellees
## V.
## EW TAX AND VALUATION GROUP, LLP, Appellee/Cross-Appellant

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-17462**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Nowell

This appeal arises from a business dispute involving the sale of an accounting practice. Following a bench trial, the trial court dismissed appellee/cross-appellant EW Tax and Valuation Group, LLP's (formerly known as Henderson, Edwards, Wilson, Evetts, LLP and referred to as HEWE in this appeal) claims for fraud and negligent misrepresentation and awarded appellants/cross-appellees Bain & Schindele Tax Consulting, LLC and Sarah Schindele (BSTC) $273,767.71 in damages for breach of contract and $20,000 in attorney's fees.

Both parties appeal the trial court's judgment. HEWE argues the trial court erred by not excusing its remaining obligations under the promissory note and rendering a take nothing judgment against BSTC or, alternatively, the trial court erred by not reducing the damage award by the required contractual offset. BSTC argues the trial court erred by: (1) failing to add accrued interest to the damage award; (2) reducing its damages with a quasi-liquidated damages provision; (3) finding a breach of the non-solicitation provision; and (4) capping its attorney's fee award.

We reverse the trial court's judgment to the extent it awarded BSTC $273,767.71 in damages and $20,000 in attorney's fees and render judgment that BSTC take nothing on the breach of contract claim. In all other respects, the judgment is affirmed.[1]

## Background[2]

Sarah Schindele formed BSTC to provide tax and bookkeeping services. In 2016, she decided to sell BSTC to stay home with her family and hired a broker to find potential buyers. HEWE showed interest in buying BSTC. In contemplating the transaction, HEWE inquired about BSTC's finances, clients, and services. Schindele provided HEWE financial statements, a client list, and informed HEWE

---

[1] HEWE has not challenged dismissal of its fraud and negligent misrepresentation claims on appeal.

[2] This background includes facts taken from the trial court's Findings of Facts and Conclusions of Law, which the parties have not challenged on appeal.

that BSTC had a profitable bookkeeping business headed by Nancy Taylor, a former Deloitte auditor. The bookkeeping services contributed significantly to BSTC's growth and was responsible for approximately one-third of its revenue. Schindele represented that Taylor was her Director of Accounting Services and managed the bookkeeping portion of the business.

On November 16, 2016, the parties signed a Letter of Intent for HEWE to purchase BSTC for $815,000 under the following relevant terms:

> $165,000 will be paid at closing with a cashier's check and $650,000 will be paid with a promissory note for that amount of principal plus interest at 6.25% and secured by the assets of the Accounting Practice. The note will be payable in 60 monthly payments of principal and interest in the amount of $7,300 beginning one month after closing, with a final payment of $375,117 at the end of 60 months.

> If the gross earned revenues of the practice for the first twelve months following closing do not equal at least $650,000, the purchase price and the note will be adjusted downward in the same ratio as the original purchase price and the gross ratio revenues bore to each other (1.25:1). The purchase price will not be adjusted below $715,000. This will allow for a total downward negative adjustment of $97,500 in the event of a sales decrease in the first 12 months following purchase.

The LOI included a non-solicitation clause prohibiting BSTC, and any affiliates, from soliciting or doing work for any of its current clients for a period of five years after the closing date.

In mid-December 2016, Taylor left BSTC and took her five best clients. HEWE did not know Taylor quit, and representatives testified that had they known of her plans, HEWE would not have purchased BSTC.

The parties subsequently entered into an Asset Purchase Agreement (APA) with an effective date of January 12, 2017, in which HEWE acquired all of BSTC's tangible and intangible assets, with limited exceptions. The APA contained essentially the same terms as the LOI but adjusted the purchase price to $812,500. The parties further agreed the fair market value of the non-solicitation provision was $300,000.

HEWE paid $162,500 at closing and executed a promissory note for the remaining $650,000 balance. The note required HEWE to make monthly payments of $7,300 per month for 60 months, with any remaining balance becoming due at the end of the 60-month period. Between February of 2017 and November of 2018, HEWE made twenty-two monthly payments.

On February 15, 2018, Schindele formed RLC Tax Advisors, LLC, and by March of 2018, she was providing accounting services for several former BSTC clients. When HEWE discovered Schindele was violating the non-solicitation provision, it stopped making its $7,500 monthly payments and filed suit against BSTC and Schindele for breach of contract, fraud/fraudulent inducement, and negligent misrepresentation. HEWE requested rescission of the APA or, alternatively, damages. BSTC filed a counterclaim for breach of contract for HEWE's failure to pay past due amounts on the note and requested a declaratory judgment that although HEWE did not generate $650,000 in revenue during the year following closing, HEWE was not entitled to reduce the purchase price by $97,500

per the APA. HEWE answered and asserted the affirmative defense of excuse based on BSTC's prior material breach of the APA.

After a bench trial, the trial court found against HEWE on its fraud and negligent misrepresentation claims because it did not justifiably rely on any representations regarding Taylor's continued employment or affiliation with BSTC. The court concluded the following:

> HEWE performed its material obligations under the parties' Agreement by (i) making the initial payment of $162,500 and (ii) making monthly payments of $7,300 through November of 2018. [BSTC] breached the Agreement when Schindele began performing services for several [BSTC] clients in March 2018. [BSTC's] violation of the non-solicitation provision was material and unjustified.

The court further concluded BSTC's breach of the APA caused HEWE to sustain the loss of the benefit of the bargain, and the purchase price should be reduced. The court concluded the portion of the non-solicitation provision that BSTC violated was worth $208,333. It then subtracted that amount and the amount HEWE had already paid BSTC ($330,399.29) and concluded BSTC was entitled to an award of $273,767.71 under the note. It further concluded BSTC was the prevailing party and awarded $20,000 in attorney's fees (capped per terms of the note). The court signed the Final Judgment on March 6, 2023. This appeal followed.

### Standard of Review

The trial court's findings of fact following a bench trial have the same weight as a jury verdict. *Inwood Nat'l Bank v. Wells Fargo Bank, N.A.*, 463 S.W.3d 228, 234–35 (Tex. App.—Dallas 2015, no pet.) (citing *Anderson v. City of Seven Points*,

806 S.W.2d 791, 794 (Tex. 1991)). We review the trial court's findings for legal and factual sufficiency of the evidence under the same standards applied to the review of jury verdicts. *Id.* When the trial court's findings are unchallenged on appeal, they are binding on the appellate court unless the contrary is established as a "matter of law" or there is "no evidence" to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

In reviewing the legal sufficiency of the evidence to support a trial court's finding of fact, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must assume the trial court made all reasonable inferences in favor of its findings. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 621 (Tex. 2014). We defer to unchallenged findings of fact that are supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014).

The trial court has no discretion in determining what the law is or applying the law to the facts. *City of Keller*, 168 S.W.3d at 827. Accordingly, we review the trial court's conclusions of law de novo. *Id.*; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We will uphold the trial court's judgment, even if we determine a conclusion of law is erroneous, if the judgment

can be sustained on any legal theory supported by the evidence. *Inwood Nat'l*, 463 S.W.3d at 235.

**Discussion**

Because HEWE's first cross-issue is dispositive of the appeal, we address it first. HEWE argues the trial court's unchallenged findings and conclusions that BSTC committed an unjustified, material breach of the APA by violating the non-solicitation provision excused its remaining obligations under the APA; therefore, it was entitled to a take nothing judgment against BSTC. We agree.

To prevail on its breach of contract claim, a party must establish: (1) a valid contract; (2) in which a party performed or tendered performance; (3) a breach of the contract; and (4) damages from that breach. *Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.). A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 763 (Tex. App.—Tyler 2018, pet. denied). When one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004); *Gulshan Enters., Inc. v. Zafar, Inc.*, 530 S.W.3d 298, 303 (Tex. App.—Houston [14th Dist.] 2017, no pet.). In determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it

could have reasonably anticipated from full performance. *TLC Hosp., LLC*, 570 S.W.3d at 763 (citing *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994)).

The non-solicitation provision relevant to the breach of contract claim states in relevant part:

> For a period of five (5) years following the Closing Date (the "Restrictive Period," the Seller and their current and future Affiliates, both collectively and individually, will not directly or indirectly: 1) solicit, whether for themselves or anyone else, any of the clients (or their affiliates) who are listed on the client list sold as part of the Purchased Assets; 2) accept work or compensation derived from (including formal or informal arrangements for deferred or delayed compensation to be received after the Restrictive Period) work done during the Restrictive Period from any of the clients (or their affiliates) who are listed on the client list sold as part of the Purchased Assets.

The trial court found the APA contained a non-solicitation provision in which Schindele, and any affiliated entities, agreed "to refrain from accepting any work from B&S clients for a period of 5 years following the closing date." It found that thirteen months after closing, Schindele formed RLC Tax Advisors, LLC and thereafter began "actively performing accounting services for several former clients of B&S for compensation, which clients were identified on the client list that HEWE purchased as part of the transaction." Thus, Schindele "honored her contractual non-solicitation obligations for a period of 14 months out of 60 total months." BSTC has not challenged any of these findings. Thus, they are binding on this Court unless the contrary is established as a "matter of law" or there is "no evidence" to support the finding. *McGalliard*, 722 S.W.3d at 696.

–8–

The trial court's findings are supported by the record. Schindele testified she pushed for a non-solicitation provision instead of a non-compete clause in the APA because she wanted the ability to return to the workforce if necessary. HEWE understood her position and agreed.

HEWE partners testified the non-solicitation provision was important because their type of work was relationship-driven, and they did not want Schindele opening a business, soliciting former clients, or doing work for them. Thus, the provision was drafted to not only prohibit her from soliciting clients but also from doing any work for them within the restrictive period. Schindele maintained she did not solicit any of her former clients; however, "quite a few" called her after she sold BSTC. She encouraged them to give HEWE a chance and stay with them.

On February 15, 2018, Schindele formed RLC Tax Advisors, LLC to provide tax preparation services. Shortly thereafter, HEWE discovered Schindele was working for clients on the prohibited list.

During trial, Schindele identified numerous clients on the list that she performed tax services for and received payment from while the non-solicitation provision was in effect. At the time of trial, she still provided tax services to many of them. She admitted she started working in violation of the non-solicitation provision because she was afraid that HEWE might, at some point in the future, stop paying her as agreed under the note.

We reject BSTC's argument that the trial court erred by finding Schindele breached the non-solicitation provision because there is no evidence she solicited former BSTC clients. The trial court's findings supporting breach of the non-solicitation provision are not based on Schindele soliciting former clients. Instead, the trial court's findings are based on her performing accounting services for former BSTC clients for compensation, which BSTC has not challenged. We defer to unchallenged findings of fact that are supported by some evidence. *Tenaska Energy, Inc.*, 437 S.W.3d at 523; *Tollett v. MPI Surface, LLC*, No. 05-17-00435-CV, 2018 WL 2926356, at *5 (Tex. App.—Dallas June 8, 2018, no pet.) (mem. op.).

Having found Schindele's breach of the non-solicitation provision was material and unjustified,[3] the trial court did not discharge HEWE's performance under the APA. The court instead subtracted $208,333 (the thirteen-month portion of the contractually agreed upon fair market value of the non-solicitation agreement) from the amount HEWE owed under on the note.

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (quoting *Mustang Pipeline Co.*, 134 S.W.3d

---

[3] Although the trial court concluded the "violation of the non-solicitation provision was material and unjustified," it was a finding of fact regardless of the label the trial court placed on the statement. *Fritz Mgmt., LLC Huge Am. Real Estate, Inc.*, No. 05-14-00681-CV, 2015 WL 3958292, at *2 (Tex. App.—Dallas June 30, 2015, pet. denied) (mem. op.).

at 196 (Tex. 2004)); *Gulshan Enters., Inc.*, 530 S.W.3d at 303.  By contrast, when a party commits a nonmaterial breach, the other party "is not excused from future performance but may sue for the damages caused by the breach." *Bartush-Schnitzius Foods Co.*, 518 S.W.3d at 436.  Generally, materiality is an issue to be determined by the trier of fact.  *Id.*

The trial court, as the trier of fact, made a finding of materiality.  Because the trial court found BSTC materially breached the APA, a finding unchallenged on appeal, HEWE was discharged from further performance under the note.  *Id.*  In concluding otherwise, the trial court erred in its application of the law to the facts. *City of Keller*, 168 S.W.3d at 827.  Accordingly, we sustain HEWE's first cross-issue.  We need not address HEWE's second cross-issue.  *See* TEX. R. APP. P. 47.1. Because BSTC's remaining issues challenge the judgment, which we reverse, we need not address them.  *See* TEX. R. APP. P. 47.1.

## Conclusion

We reverse the trial court's judgment the to the extent it awarded BSTC $273,767.71 in damages and $20,000 in attorney's fees and render judgment that BSTC take nothing on the breach of contract claim.

–11–

In all other respects, the judgment is affirmed.

                                                    /Erin A. Nowell/
                                                    ERIN A. NOWELL
230560F.P05                                         JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

BAIN & SCHINDELE TAX CONSULTING, LLC AND SARAH SCHINDELE, Appellants/Cross-Appellees

No. 05-23-00560-CV     V.

EW TAX AND VALUATION GROUP, LLP, Appellee/Cross-Appellant

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-17462. Opinion delivered by Justice Nowell. Justices Molberg and Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** to the extent it awarded appellants/cross-appellees BAIN & SCHINDELE TAX CONSULTING, LLC and SARAH SCHINDELE $273,767.71 in damages and $20,000 in attorney's fees and judgment is **RENDERED** that Appellants/cross-appellees BAIN & SCHINDELE TAX CONSULTING, LLC and SARAH SCHINDELE take nothing on the breach of contract claim.

In all other respects, the judgment is **AFFIRMED**.

It is **ORDERED** that appellee/cross-appellant EW TAX AND VALUATION GROUP, LLP recover its costs of this appeal from appellants/cross-appellees BAIN & SCHINDELE TAX CONSULTING, LLC AND SARAH SCHINDELE.

Judgment entered August 7, 2024